NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Carroll
No. 2015-0205

LAKE FOREST R.V. RESORT, INC.

v.

TOWN OF WAKEFIELD & a.

Argued: February 10, 2016
Opinion Issued: August 23, 2016

Cooper Cargill Chant, P.A., of North Conway (Christopher T. Meier on the brief and orally), for the plaintiff.

Sager & Haskell, PLLC, of Ossipee (Richard D. Sager on the brief and orally), for the defendants.

CONBOY, J. The plaintiff, Lake Forest R.V. Resort, Inc., appeals from an order of the Superior Court (Houran, J.) ruling that RSA chapter 216-I (2011 & Supp. 2015), entitled "Recreational Campgrounds and Camping Parks," applies in this case. The plaintiff also appeals from an order of the Superior Court (Garfunkel, J.) ruling in favor of the defendants, Town of Wakefield and Town of Wakefield Planning Board (planning board), regarding a procedural due process claim involving town counsel. We reverse in part and remand.

The following facts are drawn from the trial court's orders, or are otherwise found in the record. The plaintiff owns a 105-acre tract of land in

Wakefield. Approximately 68 acres of the tract are used for recreational vehicle campsites. In 1994, the plaintiff obtained approval from the planning board to build 16 seasonal cabins on the remaining 37 acres of the tract. Each approved cabin was to be built on two acres.

A question later arose as to the permissible size of each of the cabins. In 2001, the planning board decided that each cabin could be 600 square feet. The plaintiff then began creating the cabin development and as of 2007 it had constructed four cabins.

In 2007, the plaintiff consulted with the planning board about increasing the size of the remaining 12 cabins to approximately 850 square feet. By letter from the town planner, the plaintiff's request was denied and, despite the previous approval of 600 square feet per cabin, the permissible size of each of the plaintiff's remaining cabins was reduced to a maximum of 400 square feet. The matter was litigated and the Trial Court (Brown, J.) ordered that, because the plaintiff had relied upon the planning board's prior approval in creating the cabin development, the plaintiff is allowed to construct 600-square-foot cabins.

In April 2011, the plaintiff sought permission from the planning board to increase the size of the remaining 12 cabins to approximately 850 square feet. In May, the planning board held a hearing on the plaintiff's request. The plaintiff's representative, David Mankus, set forth the plaintiff's arguments as to why the planning board should grant the plaintiff's request. Attorney Richard Sager also attended the hearing and argued against the plaintiff's request. At one point, Sager stated that he was "town counsel," but he did not specify whether he was representing the planning board or some other town entity.

During the hearing, the planning board considered the effect of RSA 216-I:1, VII-a (2011), which defines "'[r]ecreational camping cabin,'" in pertinent part, as "a structure on a campsite, 400 square feet or less." As the hearing progressed, Mankus requested a continuance, which the planning board denied. At the conclusion of the hearing, the planning board denied the plaintiff's request to increase the size of the remaining cabins. In a written decision, the planning board explained that it denied the plaintiff's request for the additional square footage because "[t]he court order of the prior lawsuit approved 600 square feet and not the 850 square feet being requested at this time as well as the jeopardy to the Code Enforcement Officer if he has to deny the Building Permits for the 850 square feet."

The plaintiff appealed the planning board's decision to the superior court. Although the plaintiff has failed to provide us with a copy of the complaint, it appears from the record that the plaintiff appealed the planning board's apparent reliance upon the statutory definition of "recreational camping cabin." The record also indicates that the plaintiff claimed that its

2

federal and state constitutional rights to procedural due process were violated at the May 2011 planning board hearing because the board denied a continuance and there may have been confusion about which town entity Sager represented at the hearing and some planning board members may have thought he represented the planning board. See U.S. CONST. amends. V, XIV; N.H. CONST. pt. I, art. 15. The record further indicates that the plaintiff claimed violation of its substantive due process and equal protection rights.

In January 2013, the Trial Court (Houran, J.) issued an order finding that the planning board "based its denial on its belief that [the plaintiff's] proposed cabins fall under RSA chapter 216-I, specifically, RSA 216-I:1, VII-a, which limits certain cabins to a maximum size of 400 square feet." The court then ruled that: (1) RSA chapter 216-I applies in this case; (2) to comport with RSA 216-I:1, VII-a, the plaintiff's "cabins must be less than 400 square feet"; and (3) the planning board has the "authority to ensure compliance with RSA chapter 216-I." Subsequently, in March 2014, the Trial Court (Garfunkel, J.) ruled that any possible confusion about which town entity Sager represented at the May 2011 planning board hearing did not support the plaintiff's procedural due process claim. The court then held a four-day bench trial on the plaintiff's remaining claims. At the close of the plaintiff's case, the defendants moved for a directed verdict on all of the claims. The plaintiff objected. In March 2015, the court granted the defendants' motion. This appeal followed.

On appeal, the plaintiff argues that: (1) nothing in the language of RSA chapter 216-I precludes it from constructing "890 square foot" cabins; (2) the planning board lacks the authority to enforce compliance with RSA chapter 216-I; and (3) its rights to procedural due process were violated by confusion about which town entity Sager represented at the May 2011 planning board hearing.

We begin by addressing the plaintiff's argument that nothing in the plain language of RSA chapter 216-I precludes it from constructing "890 square foot" cabins. The plaintiff further contends that, even if the language of RSA chapter 216-I is ambiguous, the legislative history of the chapter supports its argument. Although the defendants acknowledge that the plaintiff has a vested right to build 600-square-foot cabins, they argue that: (1) the plaintiff's cabins are "recreational camping cabins" as defined in RSA 216-I:1, VII-a, and that because the statute limits the size of such cabins to 400 square feet, the planning board is precluded from approving the plaintiff's request to increase the size of the remaining 12 cabins to larger than 600 square feet; and (2) RSA 216-I:1, VII-a is not ambiguous, but, even if it is, its legislative history does not support the plaintiff's position.

As to this claim of error, the narrow issue before us is whether RSA chapter 216-I precludes the plaintiff from constructing cabins larger than 400 square feet. Because resolution of this issue requires the interpretation of a

statute, our review is de novo. See State v. Gilley, 168 N.H. 188, 189 (2015). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." McCarthy v. Manchester Police Dep't, 168 N.H. 202, 207 (2015) (quotation omitted). "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. (quotation omitted). "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Id. (quotation omitted). "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. (quotation omitted). "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id. (quotation omitted). Furthermore, we "will consider legislative history only if the statutory language is ambiguous." Union Leader Corp. v. N.H. Retirement Sys., 162 N.H. 673, 676 (2011) (quotation omitted).

RSA chapter 216-I governs recreational campgrounds and camping parks. See RSA ch. 216-I. RSA 216-I:1 (2011) provides definitions for terms used throughout the chapter. Under RSA 216-I:1, VII-a, a "'[r]ecreational camping cabin'" is defined, in pertinent part, as "a structure on a campsite, 400 square feet or less, calculated by taking the measurements of the exterior of the cabin." (Emphasis added.) Thus, the plain language of the definition establishes that a cabin that is situated on a campsite and is 400 square feet or less constitutes a "recreational camping cabin" under the chapter. However, the definition does not establish the maximum size of all cabins that may be built in a recreational campground or camping park. Nothing in the definition states that a cabin may not exceed 400 square feet. Rather, a cabin that is larger than 400 square feet is simply not a "recreational camping cabin" under the chapter.

We further observe that nothing in RSA chapter 216-I precludes a campground owner from constructing a cabin larger than 400 square feet in a recreational campground or camping park. The chapter sets forth various requirements, rules, permissions, and exceptions relating to recreational campgrounds and camping parks. See, e.g., RSA 216-I:2 (2011) (density), :3 (2011) (water supply), :4 (Supp. 2015) (disposal system), :7 (2011) (storage of property considered to be abandoned), :15 (2011) (exception for motorsport events). There is no provision, however, setting forth the maximum size of cabins that may be built in recreational campgrounds or camping parks. Had the legislature intended to set forth such a requirement, it could have done so expressly.

4

Accordingly, we conclude that the trial court erred in ruling that, to comport with RSA chapter 216-I, the plaintiff's "cabins must be less than 400 square feet." We, therefore, reverse the ruling and remand with instructions to the trial court to vacate the planning board's decision and remand to the board to address the plaintiff's request to increase the size of the remaining cabins. We note, however, that in ruling on the narrow issue presented by this claim of error, we express no opinion as to whether the plaintiff's request is otherwise subject to, or permissible under, other relevant statutes, regulations, and ordinances.

In light of our ruling, we need not address the plaintiff's argument that the planning board lacks the authority to enforce compliance with RSA chapter 216-I, or the plaintiff's argument that its procedural due process rights were violated at the May 2011 planning board hearing.

Finally, any issues raised in the plaintiff's notice of appeal that it has not briefed are deemed waived. See Mountain View Park, LLC v. Robson, 168 N.H. 117, 121 (2015).

Reversed in part and remanded.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.